**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

MARTIN HUMBERTO MOSCUI,
Petitioner,
v.
FERETI SEMAIA, et al.,
Respondents.

Case No. 5:26-cv-05748-MBK

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

What should have been a joyous day in Martin Humberto Moscui's life has turned into a living nightmare.

Mr. Moscui first came to the United States in 2024 on a temporary visa and subsequently applied for asylum. The Government permitted Mr. Moscui to remain at liberty and issued him a work permit while he pursues his asylum case. For the past several years, Mr. Moscui has resided with his wife of three decades in Salt Lake City, Utah. During this time, Mr. Moscui has held steady employment as a caregiver for disabled and elderly individuals,

paid his taxes, attended church, pursued his immigration case without incident, and has had no arrests or convictions.

Mr. Moscui's son, Matthew Alexander Moscui Maldonado, and his fiancée, Adrienne Elizabeth Taylor, are scheduled to be married in October 2026. On August 14, 2026, Mr. Moscui, his wife, his son, and Ms. Taylor flew from Utah to Orange County, California, to see the wedding venue and meet Ms. Taylor's family. Shortly after landing in John Wayne Airport and deboarding the plane, men in plainclothes approached Mr. Moscui without identifying themselves as law enforcement officers. The unidentified men grabbed Mr. Moscui by the shirt collar. During the altercation that followed, the men threw Ms. Taylor to the floor, ignored Matthew's pleading that he had his father's paperwork available to present, pinned Mr. Moscui against a wall, and tased Mr. Moscui multiple times to the point of drawing blood. The unidentified men, who turned out to be Immigration and Customs Enforcement ("ICE") officers, then took Mr. Moscui into custody without providing any explanation for his arrest or an opportunity to contest why he should not be detained. After taking Mr. Moscui for medical care, the ICE officers transferred him to the Adelanto Detention Facility, where he remains today.

In this habeas action, Mr. Moscui argues that his arrest violated the Fourth Amendment, the Immigration and Nationality Act ("INA"), and the Administrative Procedure Act ("APA"), and his ongoing detention violates due process. For the reasons that follow, the Court concludes that Petitioner's sudden detention—without notice, an opportunity to be heard, or any material changed circumstances justifying his detention—violates due process and that a post-deprivation bond hearing did not cure the constitutional violation he

suffered. The Court therefore grants the Petition and issues a writ of habeas corpus requiring Mr. Moscui's immediate release.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Martin Humberto Moscui is a 56-year-old native and citizen of Ecuador. Dkt. 1 at 4. Petitioner first entered the United States via Hartsfield-Jackson Atlanta International Airport on December 18, 2023. *Id.* at 6. Petitioner was admitted as a B-2 visitor with authorization to remain until June 17, 2024. *Id.* On September 13, 2024, within one year of his admission, Petitioner's wife filed a Form I-589 (Application for Asylum and for Withholding of Removal) with United States Citizenship and Immigration Services ("USCIS") that listed Petitioner as her dependent spouse. *Id.* USCIS acknowledged the filing on September 24, 2024, and confirmed receipt of the filing fee on November 11, 2025. *Id.* Both notices were mailed to the family's home address in Salt Lake City, Utah. *Id.* Petitioner attended his biometrics appointment and, to date, the application remains pending. *Id.* The family is awaiting a USCIS interview. *Id.*

On April 29, 2025, USCIS issued Petitioner an Employment Authorization Document, category (c)(8) (pending asylum), which is valid through April 28, 2030. *Id.* The Social Security Administration issued Petitioner a Social Security card on July 10, 2025. *Id.* Since then, Petitioner has worked as a caregiver for disabled and elderly persons, including military veterans, with a home-care company in Salt Lake City, and was in the process of completing certified-nursing assistant coursework. *Id.* Petitioner holds a Utah driver's license, attends a congregation in Salt Lake City when his work schedule permits, and has filed a federal income tax return for 2025. *Id.* Petitioner has no criminal history anywhere in the world. *Id.* at 7.

Petitioner has been married to his wife, Sylvia Margoth Maldonado Masabanda, since 1997. *Id.* at 6. Together, they have three adult children. One of his children, Matthew Alexander Moscui Maldonado ("Matthew"), lives in Salt Lake City, Utah, and has lawful status. *Id.* at 7. Matthew is engaged to Adrienne Elizabeth Taylor. *Id.* They are scheduled to be married in Orange County in October 2026. *Id.* at 7. On August 14, 2026, Petitioner, his wife, his son Matthew, and Ms. Taylor flew together from Utah into Orange County, California, landing at John Wayne Airport. *Id.* The family intended to visit Matthew's and Ms. Taylor's wedding venue and to meet Ms. Taylor's family. *Id.* Petitioner travelled under his own name, using his own identification, and passed through Transportation Security Administration ("TSA") screening to board the flight. *Id.*

At approximately 8:55 a.m., shortly after deboarding the plane, Petitioner, his son, and Ms. Taylor were walking through the terminal and stopped at a restroom. *Id.* at 7-8. Petitioner exited the restroom and heard someone call his name. *Id.* at 8. Upon turning, a man in plainclothes pushed him and said something in English, which Petitioner did not understand given his limited English proficiency. *Id.* Another man in plainclothes confronted Ms. Taylor "very aggressively," after which Petitioner decided to step between them. *Id.* One of the plainclothes men then grabbed Petitioner by his shirt collar and pushed him backwards several feet. *Id.* Another plainclothes man grabbed Ms. Taylor by both shoulders and threw her to the floor. *Id.* Petitioner's son offered to present Petitioner's paperwork, but was ignored. *Id.* The men pinned Petitioner against a wall, dragged him to the ground face-first, and kneeled on him. *Id.* The men repeatedly tased Petitioner to the point of bleeding. *Id.* at 9. One of the men attempted to tase an unrelated bystander who had stepped in to try and stop the violence. *Id.* Two bystanders who

witnessed the events submitted sworn declarations stating that Petitioner did not resist or otherwise display aggressive behavior. Dkt. 1-1 at 13-21; Dkt. 1 at 8.[1]

The ICE officers subsequently took Petitioner into custody. Dkt. 8-1 at 7. Petitioner repeatedly informed the officers that his shoulders were injured and asked them not to twist his arms. Dkt. 1 at 9. Petitioner has been in physical therapy since March 2026 for tendinitis and cervical radiculopathy. *Id.* at 9. At some point after his apprehension, Petitioner reports losing awareness of his surroundings after falling. *Id.* Eventually, the men took Petitioner out of the terminal and into an unmarked black car. *Id.* However, because Petitioner could not walk unaided, was trembling, dizzy, nauseated, and had a severe headache, the men transported Petitioner to UCI Health in Irvine for medical clearance. *Id.*; Dkt. 8-1 at 7. At the hospital, one of the officers that spoke Spanish informed Petitioner that he had been arrested for overstaying his visa. Dkt. 1 at 10. This was the first time Petitioner had been provided with any explanation for his arrest. *Id.* Petitioner responded that he had a pending asylum application and legal work authorization. *Id.* The men did not respond. *Id.*[2] ICE subsequently transferred Petitioner to the Adelanto Detention Facility, where he remains today.

---

[1] Although Respondents do not directly address these allegations, they submitted a Form I-213 for Petitioner, which states that Petitioner "refused to comply" and "actively resisted arrest by refusing to give his hand and arm to" an arresting officer. Dkt. 8-1 at 7. "[T]wo unknown individuals, who were later identified as [Petitioner's] family members, attempted to intervene by pushing and shoving ERO officers. [Petitioner] continued to actively resist. As a result, an ERO officer deployed a [taser] to gain compliance and control of [Petitioner]." *Id.* To the extent that Respondents dispute Petitioner's account of his arrest, the Court need not resolve this factual dispute because it is immaterial to Petitioner's habeas claims.

[2] Petitioner claims that, as of the date of the Petition, he had not been presented with or otherwise seen a warrant for his arrest. *Id.* at 9. Respondents attach to their Answer a Form I-200 (Warrant for Arrest of Alien), which indicates the warrant was

On August 14, 2026, DHS issued a Notice to Appear ("NTA") indicating Petitioner had been admitted to the United States and charging Petitioner with removability under 8 U.S.C. § 1227(a)(1)(B), i.e. overstaying his visa. Dkt. 1-1 at 35. The NTA set an initial hearing for August 31, 2026, at the Adelanto Immigration Court. *Id.* On September 14, 2026, an Immigration Judge ("IJ") found Petitioner had "failed to meet his burden to establish that he is not a flight risk" and denied a change in custody status. *Id.* at 23. Both parties reserved appeal, for which their opening briefs are due by October 15, 2026. *Id.* at 24.

Petitioner filed the instant petition on September 29, 2026. Dkt. 1. He alleges (1) his warrantless arrest without a risk-of-escape finding violated 8 U.S.C. § 1357(a)(2) and its implementing regulations, pursuant to *Vasquez Perdomo v. Mullin*, No. 2:25-cv-05605-MEMF-SP, Dkt. 738 (C.D. Cal. Sept. 2, 2026); (2) his unreasonable seizure violated the Fourth Amendment and 8 C.F.R. § 287.8(c)(2)(ii); (3) his deprivation of liberty without due process violates the Fifth Amendment; and (4) his detention violates the Administrative Procedure Act. *Id.* at 15-18. Petitioner requests that the Court order his immediate release. *Id.* at 18.

On October 6, 2026, Respondents filed their Answer. Dkt. 8. Respondents argue: (1) Petitioner's claims as to his arrest and detention are moot because the IJ's bond order is the legally operative basis for Petitioner's current state of custody; (2) Petitioner has failed to exhaust his administrative remedies; and (3) Petitioner has not identified any due process violation or error of law that justifies habeas relief, given he received a bond hearing. *Id.* at 2-6.

---

issued on August 13, 2026, and served on Petitioner on August 14, 2026. Dkt. 8-1 at 14. The Form I-213 states that ICE officers informed Petitioner "that they had a warrant for his arrest" at some point after he was "taken into custody." *Id.* at 7.

On October 7, Petitioner filed his Reply. Dkt. 9. Petitioner argues that exhaustion is neither required nor appropriate, that release is the appropriate remedy, that Respondents did not address the unlawfulness of Petitioner's arrest, and that this Court has jurisdiction to examine the constitutionality of Petitioner's arrest. *Id.* at 3-11.

## II. DISCUSSION

The Court begins by addressing Respondents' arguments that the Petition should be denied on exhaustion and mootness grounds, before turning to the merits of Petitioner's habeas claims.

### A. Waiver of exhaustion is appropriate

Respondents argue that the Court should decline to address Petitioner's claims because he has not fully exhausted administrative remedies by appealing his bond denial to the BIA. Dkt. 8 at 3-5.

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th

Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

Petitioner argues that exhaustion should not be required because the "Petition does not seek review of the Immigration Judge's bond decision, and Petitioner's separate BIA appeal, if filed, will not present the questions raised here." Dkt. 1 at 5. Petitioner also argues that exhaustion should be excused because "the Immigration Judge nor the BIA has authority to adjudicate whether an arrest complied with 8 U.S.C. § 1357(a)(2) and 8 C.F.R. § 287.8, to decide Petitioner's Fourth and Fifth Amendment claims, to apply the Administrative Procedure Act, or to order release as the remedy for an unlawful arrest" and Petitioner would suffer irreparable harm if forced to wait for the BIA to decide his appeal. *Id.*

The Court finds that Petitioner has shown a waiver of exhaustion is warranted. As Petitioner argues, the Petition does not raise a challenge to the IJ's bond determination, which would be the subject of his BIA appeal. Instead, he raises legal and constitutional challenges to his arrest and detention that would not be before the BIA and, in any event, the BIA could not consider because it "does not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *See In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer.").

Petitioner would also suffer significant irreparable harm if forced to wait for the BIA to render a decision on his appeal. Petitioner has several

serious health conditions that require ongoing monitoring and treatment, including his shoulder injuries and persistent gastritis. Dkt. 12 at 12. Additionally, Petitioner's son is scheduled to be married this month and, absent a waiver, he would likely miss the wedding. Although it is difficult to predict with certainty, Petitioner's pending appeal is likely to take substantial time. "In 2024, EOIR data showed an average processing time of 204 days for bond appeals." *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). The delays have likely only increased in recent years. As the Department of Justice recently reported, "between fiscal year 2015 and the end of fiscal year 2025, the Board's pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). During this time, the BIA has been unable to "keep up with incoming filings while tackling the backlog in any meaningful way." *Id*. While DOJ is implementing new reforms to "streamline" BIA review and reduce this backlog, these efforts will likely take time—particularly because DOJ recently reduced the BIA's membership from 28 to 15 members. *Id*.

Accordingly, the Court waives the prudential exhaustion requirement.

**B. Petitioner's claims are not moot**

Respondents argue that Petitioner's bond hearing mooted his challenges to his arrest and detention. Dkt. 8 at 2, 4. The Court rejects this argument.

A claim is moot only when "there is no longer a possibility" that a litigant "can obtain relief for his claim." *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). "[W]hen, by virtue of an intervening event, a court [ ] cannot 'grant any effectual relief whatever' in favor of the [petitioner]," the proceeding should be dismissed as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation omitted). Here, Petitioner's bond hearing

does not preclude the Court from granting any effectual relief. Indeed, the Court can still grant the only relief that Petitioner seeks in the Petition—his outright release. There is therefore no sense in which Petitioner's claims are moot. To the extent that Respondents mean to suggest that the bond hearing establishes that Petitioner has suffered no legal or constitutional violations, or that he has not been prejudiced by any such violations, the Court addresses those issues below.

**C. Petitioner's detention violates procedural due process**

Petitioner claims that he is entitled to immediate release from custody because, *inter alia*, he was deprived of his liberty without adequate due process. Dkt. 1 at 17-18. The Court finds that Petitioner's ongoing detention violates procedural and substantive due process.

**1. Procedural due process**

This Court has previously found that, under the *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) framework, noncitizens in circumstances comparable to Petitioner were entitled to release because their re-detention without a hearing or a material change in circumstances violated due process. *See, e.g.*, *Sun v. Warden of Adelanto ICE Processing Center, et al.*, No. 5:26-cv-03595-MBK, 2026 WL 2058437, at *1 (C.D. Cal. July 14, 2026); *Yataco v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03229-JAK-MBK, 2025 WL 4065463, at *4 (C.D. Cal. Dec. 26, 2025), *adopted*, 2026 WL 158151 (C.D. Cal. Jan. 16, 2026).

Courts have extended these principles to cases in which a noncitizen had not been released from immigration custody previously, but where the record indicates that the Government "deliberate[ly] acquiesce[d]" in the noncitizen's remaining at liberty in the United States. *See Martinez v. Acting Warden of the Adelanto Detention Center*, No. 5:26-cv-02635-ACCV, 2026 WL 2262269, at *5 (C.D. Cal. Aug. 5, 2026); *Gagik T. v. Chestnut*, No. 1:26-cv-

04337-MWJS, 2026 WL 1837413 (E.D. Cal. June 25, 2026) (holding that a visa overstayer with a pending asylum application "possesses a constitutionally protected liberty interest that the Government cannot extinguish without affording pre-deprivation process"); *Kharitonova v. Albarran*, No. 3:26-cv-01362-JSC, 2026 WL 531441, at *2 (N.D. Cal. Feb. 25, 2026) (concluding that noncitizen who overstayed nonimmigrant visa and entered removal proceedings, but was never detained, had a protected liberty interest in remaining free).

This case is analogous. Petitioner became subject to detention under 8 U.S.C. § 1226(a) after his B-2 visa expired, but the Government elected not to detain him and instead granted his employment authorization while his asylum case remains pending. Dkt. 1 at 6. For the past several years, Petitioner has proceeded with his asylum claims, remained gainfully employed, has had no arrests or convictions, and has been deepening his ties in the community. Throughout this time period, the Government knew exactly where Petitioner was but permitted him to remain at liberty. Under these circumstances, the Court finds that Petitioner's detention without a pre-deprivation hearing or a material change in circumstances violates due process.

**2. Substantive due process**

As discussed above, the Government permitted Petitioner to remain at liberty while he pursued his asylum case, notwithstanding the fact that he was subject to detention under 8 U.S.C. § 1226(a) (providing that the Government "may" detain a noncitizen "pending a decision on whether the alien is to be removed from the United States"). The BIA has recognized a limitation on the Government's authority to re-detain noncitizens under Section 1226(a), indicating that "no change should be made by [DHS] absent a

change of circumstance." *Matter of Sugay*, 17 I&N Dec. 637, 640 (BIA 1981). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018). The Government has represented that, pursuant to this practice, "DHS generally only re-arrests an alien pursuant to § 1226(b) after a material change in circumstances." *Id.* (quoting Government brief). *See also Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (citing *Matter of Sugay* and recognizing that "absent changed circumstances, such as reinvolvement with the criminal justice system, ICE cannot redetain Panosyan") (internal citations and quotations omitted).

While this rule was adopted as a matter of agency practice, its grounding is constitutional. Where the Government previously determined that a noncitizen's detention is not necessary, it follows that re-detention is only justified if there has been some change in circumstances demonstrating that the noncitizen now presents a risk of danger or flight requiring detention. The rule ensures that detention bears a "reasonable relation" to a legitimate purpose and protects against an arbitrary deprivation of a noncitizen's liberty. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). *See also Safi v. Noem*, No. 2:26-cv-00308-TLF, 2026 WL 445564, at *3 (W.D. Wash. Feb. 17, 2026) ("This standard prevented arbitrary revocations and ensured that detention decisions rested on individualized assessments of changed circumstances rather than categorical assumptions."). The Supreme Court has recognized only two permissible non-punitive purposes for detention under the immigration laws: ensuring a

noncitizen's appearance at removal proceedings or removal, and preventing danger to the community. *Zadvydas*, 533 U.S. at 690-92.

Here, Respondents have not identified any changed circumstances indicating that Petitioner is a danger or flight risk. To the contrary, Respondents do not dispute that Petitioner has pursued his asylum claim without incident, properly updated immigration authorities with his address, and has not been arrested or convicted of any crimes in the United States. As such, the Court finds that Respondents detained Petitioner without any material change in circumstances justifying his detention.

**3. Remedy**

Despite asserting that Petitioner has not identified any due process violation, Dkt. 8 at 5, Respondents do not meaningfully address what due process requires. Instead, Respondents only argue that Petitioner's post-deprivation bond hearing "is strong evidence that 'the existing agency procedures sufficiently protected [Petitioner's] liberty interest and mitigated the risk of erroneous deprivation,'" citing *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022). Dkt. 8 at 5.

However, most courts to address the issue—including this one—have "concluded that a post-detention bond hearing is insufficient to cure a violation of procedural due process arising from detention without a pre-deprivation hearing." *Nurlan Gudavasov v. David Marin*, No. 5:26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases); *Orellana-Rivera v. J. Johnson*, 5:26-cv-2116-HDV-AJR, Dkt. 18 at 2 (C.D. Cal. May 14, 2026) (observing that an "increasing wave of district courts have concluded, a post-hoc bond hearing" is insufficient to remedy the denial of a

petitioner's right to pre-deprivation process and ordering the petitioner's release).

These decisions reason that a post-deprivation hearing "cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty." *Khalsa v. Janecka, et al.*, No. 5:26-cv-00623-CAS-AGR, 2026 WL 486670, at *7 (C.D. Cal. Feb. 19, 2026) (quoting *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1324 (W.D. Wash. 2025)). *See also Mendoza v. Adelanto ICE Processing Center Warden*, No. 5:26-cv-02144-KES, 2026 WL 1480247, at *4 (C.D. Cal. May 22, 2026) ("allowing the government to 'cure' such a violation by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless"); *Hector Jose Martinez Lopez v. Dep't of Homeland Sec. et al.*, No. 25-cv-03607-KK-ADS, 2026 WL 1365980, at *7 (C.D. Cal. Apr. 23, 2026) ("a post-detention bond hearing would offer little more than cold comfort to Petitioner, whose erroneous deprivation of liberty, along with the concomitant damage to his mental health and impact on his family, has already taken place") (cleaned up).

"[T]he purpose of habeas remedies is to put the defendant back in the position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). Accordingly, a person who has suffered a constitutional violation should ordinarily be returned "to the status quo, or 'the last uncontested status which preceded the pending controversy.'" *V.K. v. Noem*, No. 5:26-CV-00241-MWC-SK, 2026 WL 246023, at

*5 (C.D. Cal. Jan. 25, 2026) (quoting *Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2026)); *Chowdhury v. Lyons*, No. 5:26-cv-01252-MEMF-E, 2026 WL 1045562, at *7 (C.D. Cal. Apr. 13, 2026) ("prompt release is the remedy that will best return Petitioner to the status quo and restore his position as it was prior to the detention that Petitioner contends was in violation of his constitutional and statutory protections"). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Moreover, Petitioner was likely prejudiced by being forced to litigate the legality of his confinement from inside a detention center over the past two months. As numerous courts have recognized, detention makes it more difficult for noncitizens to access counsel, obtain evidence, and otherwise prepare for a bond hearing. *See generally Biwot v. Gonzales*, 403 F.3d 1094, 1099 (9th Cir. 2005) (discussing the difficulty of obtaining legal representation for an "incarcerated immigrant"); *Lopez Reyes v. Bonnar*, 362 F. Supp. 3d 762, 778 (N.D. Cal. 2019) (discussing the "substantial challenges" faced by a noncitizen attempting to litigate a removal case while detained). Here, Petitioner has explained how he has suffered from sleep deprivation and persistent gastritis while detained, and has not been able to continue physical therapy for his injured shoulders. Dkt. 1 at 12. Petitioner is also been confined in Adelanto, California, far from his home and family in Utah. Under these circumstances, the Government's denial of pre-deprivation process certainly "might" have led to an erroneous deprivation of his liberty. *See Singh v. Holder*, 638 F.3d 1196, 1205 (9th Cir. 2011) (finding that the petitioner was entitled to habeas relief where he was prejudiced by an IJ's application of the

incorrect standard of proof at his bond hearing because it "might" "have affected the outcome of the bond hearing").

Accordingly, the Court finds that Petitioner is entitled to release due to Respondents' violation of his due process rights.[3]

## III. CONCLUSION

For the foregoing reasons, the Court ORDERS that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Martin Humberto Moscui's (A# 242-365-814) immediate release and prohibiting his re-detention absent notice and a hearing before a neutral decisionmaker at which the Government must show material changed circumstances warranting his detention; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this order.

Dated: October 8, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE

[3] Because the Court finds that Petitioner is entitled to release on due process grounds, it declines to address his other claims.